The 4th District Public Court of the State of Illinois has now convened and is now with Craig H. DeArmond presiding. Good afternoon. Please have a seat. It's our first time back, everybody's going to have to adjust their chairs. Alright, our first case for this afternoon is 4-21-0633 Fox v. Ameren. Good. Counsel for the appellant, please state your name for the record. Matthew Sibron for the appellant, Craig Fox. Thank you. And counsel for the appellee, could you please state your name for the record. Robert Elworth on behalf of the defendant's appellee, Ameren. Thank you. Counsel for the appellant, you may proceed. Thank you, Your Honor. May it please the court. Counsel. As you know, we are appealing the trial court's finding that Ameren's common law and statutory duties were negated by the open and obvious doctrine based upon the Hoseley decision. Rather than rehash the briefs, I wanted to touch on three topics today. And if Your Honors have any other topics you want me to discuss, I'd be happy to do so. One is going to be why these power lines in this instance were not open and obvious. Two is why Ameren, a power company with a high duty of care, had reason to foresee that contact with these power lines was foreseeable. And why, number three, the open and obvious defense cannot negate Ameren's statutory duty violation for the NESC Section 23 clearance requirements. First, open and obvious, the law says that we cite that both the condition and the risk must be obvious. And we define obvious as what a reasonable person in a visitor's position exercising ordinary intelligence, perception, and judgment would recognize. Here, the visitor is Brad Fox. Brad Fox is a tow truck driver. He has no OSHA training. He has no construction safety training. He is hired specifically by the city of Bairdstown to perform a task. And he is hired by the public works department and the head of the public works department, Gary Hamilton, and his associate, Dustin Looker. Those are the individuals who have the training and expertise to make sure these jobs are done safely. And Brad Fox is told it is safe and okay to go do this work. And so he is told... He was also told about a month before that a dump truck had come in contact with the wire. He was told about that, and he was also told that that condition had been fixed and that the lines had been raised, is what Brad was told. So Brad Fox, under that condition, under these circumstances, and someone like him, would not have reason to foresee that Bairdstown is going to throw him in a fire and expose him to some hazard. He would not have... And that's more than true, especially since in 2013 he did this, and the boom did not contact the power lines. So do you know how high the power lines were in 2013? The reasonable inferences from the evidence, circumstantially, is that it was 17.25. In 2013? In 2013. It hadn't been changed between 2013 and 2015, according to AMR. Well, the power company says, however high the power lines were, they should have been able to see them and adjust this work accordingly. Why aren't they right? They are not right here because this is where the perception comes in and what's going on on the scene that day. This is a water treatment plant where there's commercial trucks going to be operating underneath that power line on a regular basis. So it's a question of what AMR can foresee happening. And what the NESC tells AMR is that given the type of facility, this is a public facility, commercial trucks are going to be operating underneath these power lines performing various tasks. Here, we not only have commercial trucks operating underneath these power lines, but we also have a situation where Brad Fox, the visitor, is inside a boom truck. And he is essentially trying to, with his boom elevated, and so he's got power lines and he's moving his truck forward. And so he's inside the boom truck. And so when he's inside the boom truck, his perception of the power lines was that he could not contact them. But when he inspected it before and looked at the power lines, his perception that day was that the boom could not contact the power lines. The individuals on site agreed. Dustin Lugar saw the condition of the boom as it related to the power lines and said, I didn't think it was possible for this to hit it. And so it's what a reasonable person with this perception would have as to whether the boom can contact it. And so here, it would be reasonable minds can differ based upon the circumstances as to whether this was an obvious risk of contact occurring. Is there any dispute on this record by the defendant that the height at which the power lines were when the contact with the truck occurred and that this height was in violation of the standards? There is not a dispute on that, Judge. Immediately after the incident, when Amherst came out to the scene and inspected, they filled out an incident report and declared it a clearance violation in the incident report itself, which was part of the appellate record. If Fox was the same guy doing this two years earlier with the same truck, I don't know that's a key issue, but I'm just kind of curious, what accounted for why there was no incidents in 2013 and 2015 to hit the lines? The record, that was not asked of Brad Fox in his deposition. Say again, what? That was not specifically asked of Brad Fox in his deposition. What's your supposition? The deposition was about 2013 and 2015. The supposition would be that the sand bunkers that were being constructed were not in the exact same position being constructed. So someone of his perception, Brad Fox, the tow truck driver, isn't there to judge, well, is the sand bunker one foot closer, two foot closer? It's being there. So that would be the only supposition that I would have, which would be speculative, as to why there was a difference in 2013 and 2015. If I understand correctly, you say even if it was open and obvious and should have been to Fox, it doesn't matter because that doctrine doesn't apply. Why is that? First of all, am I correct in your argument? No. My position is that these are not open and obvious. Let me restate it. Even if this is something which could be viewed as open and obvious, not the doctrines of it, but just you see it as open and obvious, that your position is it doesn't matter, they're still liable. Am I right? You're correct, Judge. Why is that? For two reasons. One is we have a specific statutory duty here that was adopted by the Illinois legislature and the specific statute is the NESC Section 23 that mandated the minimums. That set the standard of care, and under Illinois law, the issues as to whether or not that imposes a statutory duty are, is that that statute is designed to protect human life, and whether the plaintiff falls within the class of individuals that statute is designed to protect. We meet, and AMR does not contest, either of those issues. Brad Fox is a member of the public. This is what the NESC says. He is designed to protect, and they can foresee that commercial trucks are going to be operating under these types of power lines. This is why they set it at 20.75 versus different than a residential property. So one of the issues when determining if it's a statutory duty is not a common law duty analysis, which is what the open obvious rule really is. It's determining whether or not it's foreseeable from the AMR perspective, whether contact would occur. That's not relevant to whether or not they have a statutory duty. So here, and that's what is discussed in Beard, that is what is referenced in the Barthold decision, and that is actually what all the cases relying on Beard since that time, including the Missouri case that is discussed later in our brief. So the open and obvious rule cannot negate the statutory duty because it's a different analysis. Number two is we have a common law duty here based upon the four factors, and all the cases cite since power companies have a high duty of care with respect to the placement of power lines because power lines present such a dangerous hazard that is insidious to the public that they're going to impose that duty when it's reasonably foreseeable contact with the power lines might occur. That is what this court said was the standard in the Martins case, is whether or not it is reasonably foreseeable contact with the power lines might occur. Here the NESC tells Ameren, if you violate these restrictions, it is foreseeable and expected that activity below those lines might contact the power lines. And so based on the NESC violation, that open and obvious rule cannot negate the common law duty. What it goes to and what Ameren is allowed to do is say, let's put the duty issue on the shelf that they have a duty at trial. They are allowed to claim that they were not negligent, that they did not breach that duty, that they acted reasonably under the circumstances by having it at this height for whatever reason they want to claim. At just this point, they seem to be arguing that if we were to find against them, that that would be essentially absolute liability. They would be deprived of any defense. Is that correct? It's not correct at all. They would be allowed to claim that not only they acted reasonably under the circumstances, that they were not negligent, that they didn't violate that duty here. They can claim, like they even in their brief brought up, well, it looks like there was some blacktop raised on the ground since that might have impacted the height difference. They are allowed to claim that. They are allowed to claim that their actions was not a proximate cause of this incident, that Brad Fox's negligence wasn't the sole proximate cause. Is comparative negligence still available to them as a? Absolutely. Absolutely. Which is not available in strict liability per se negligence cases. Did this discussion occur at the trial level at all about strict liability and the availability of comparative negligence? It did, Judge. In argument, I discussed it with the trial judge. Did you make the same concessions there that you're doing now, namely that this isn't strict liability and they're still able to raise comparative negligence or lack of proximate cause as defenses? Yes. What did Ameren say at the trial level with regard to all that? They said that it was basically strict liability and that they would not, they would be absolutely liable and insurers of the public's safety. And tantamount, if you just show that there's a violation and you wouldn't have any, they couldn't rebut that, but that's not what we're claiming. You can rebut that these power lines were explained. Why are there 17 and a quarter feet and three and a half feet below the height? You can rebut it and explain it, and a jury can decide, is that reasonable? Is that negligence? And so that was my understanding of Ameren's response. Did the trial court make clear that it was engaged in a duty analysis and thought the open and obvious doctrine eliminated the duty of Ameren under these circumstances? The trial court ordered one page, and I think where the trial court got it wrong was they were not, the trial court did not understand, A, the difference between statutory duty and common law duty, and why a statutory duty like this that's specific can't be negated by the open and obvious rule. And so that's one, but I think they got, the trial court got so hung up with the claim that, I see the power lines up there, it must be open and obvious. And so they're just saying, without any further analysis, they didn't do it in the order, in an argument that the court didn't clarify, how do you get to negate these duties? They didn't conduct a four-factor test on the common law duty analysis, and they didn't explain how or why these, this would be open and obvious. And so they just said these are open and obvious, there's no duties, is essentially, and they rely on Posley case, which is the 7th district, 7th circuit, I apologize, which said there, it was, the issue was statutes that were basically just codifying the common law reasonable standard. It wasn't a specific statute saying, do this, don't do that. And so they, what Posley said is, there, given this statute, the common law defenses can apply. It was not, and what I think the court misinterpreted, saying broadly, the open and obvious doctrine must negate all types of duties, statutory, specific ones, or common law duties. And so, clearly, the Public Utility Act, which is thousands and thousands of pages, it codifies statutes that have nothing to do with safety of the public. It codifies statutes that are, have to do with the safety of the public, but are just a common law recitation. And then they do this here, where it's also a, it's setting a specific standard above and beyond what the common law provided. And so Posley was only analyzing the specific statute there, it was not, which was not a specific statute. And so that's where I think the court got it wrong. So I hope that answers your questions, Judge. When it comes to, and I would like to reserve some time for rebuttal, and I'd like to address one more issue before we get to that. I'm not sure how much time I've got. But it's the foreseeability factor here. When there's a, putting the statutory duty aside, let's talk about the common law duty here. The cases in Martins and by this court said, when it is reasonably foreseeable, contact might occur, they have a duty to properly place and insulate the power lines. Here, the facts show that it was reasonably foreseeable to Ameren. The circumstances here, the lines issue were installed specifically because Ameren was notified, Bairdstown is building this water treatment plant. This driveway that the power lines were going over was already there. And that driveway runs all the way out from Bairdstown Road to the water wells. And they were going to be building this new facility immediately adjacent to this. And so Bairdstown asked Ameren to put the power lines in, because we needed to get power for the pumps to get the water to the treatment plant. And so here in 1975, they knew immediately that there's going to be commercial trucks building the building, there's going to be commercial trucks servicing the building, there's going to be commercial trucks going under these power lines all the time. And so it's reasonably foreseeable that these large trucks are going to be working in close proximity to the lines. In addition, we've got the issue of the contact 30 days beforehand, where it's the same physical forces at play. You've got a commercial truck who is making a delivery to the facility, who is doing its work that it's hired to do, and when it's doing that work, it contacted the power lines, and Ameren was notified. When you have a power company who is dealing with electricity, and the public safety is at risk, and you respond to that, my expert says you'd have to conduct a root cause analysis according to OSHA. They did not do that. The root cause analysis would have shown that these power lines were at a clearance violation there, and they would rate that. That would have prevented the harm. When we come to the incident in Ameren on 30 days before, they knew right then and there, when they arrived on the scene, they see these huge sand piles. Ameren employees are Bairdstown residents. They know these aren't permanent structures. They testified that this sand has to be hauled away. They know in the immediate future there's going to be other large commercial trucks doing the exact same thing. The Ameren employee testified. He put the line back up at the same time. When you have a high duty of care, it is unreasonable to think to do the exact same thing and expect a different outcome. That is not what the law provides, nor should it. And so when it comes to foreseeability, this is why our case is much similar to Martin's case at this port with the feed bin that was installed, and then the power line was installed after the feed bin. Merlot, we have sewer lines being constructed, and then in close proximity to the power lines, and the power company knew that this was being incurred. And so the cases that they rely on, the walking case, when they said this falls outside the category of reasonable foreseeability, is when the power lines were installed 40 years before any facility or building is constructed on the premises. And so it's unreasonable for that power company to foresee that type of conduct. That's not what we have here. We've made our prima facie case, and that's why only the operator will, as a matter of law, take away their common law duties. Thank you. Thank you, Counselor. You will have additional time after the vote. Thank you very much. Counsel for the appellee. Again, Robert Edwards on behalf of the appellee Ameren here. Appreciate the opportunity to be back first. There's something unique about that. Lots of things we've been going on for a long time, and suddenly we have firsts. A couple things here to start. I don't want to make my whole lifetime response to the appellant here, but the first thing, number one, the existence of power lines and what goes through those power lines has long been held to be an open and obvious danger. In 1876, the Genaust case from the Supreme Court, the last paragraph of the entire opinion, as it is common knowledge that electricity is dangerous, so is it also common knowledge that any line or wire carrying electricity is dangerous. This is a rather specific finding. There shouldn't be an adult walking the planet who doesn't understand that if you start to mingle about with large metal objects next to power lines, that you are introducing yourself to significant danger. Counsel, let me ask you the same question I asked Mr. Siporin, which is was there any disagreement at the trial level or now as to the height of the power line being about three feet under what it should have been by the rule or that the statute and rule govern the height of the power line. There's no particular dispute about those things, except there is no evidence to show before the dump truck hit it and then again after Mr. Fox hit it, did that lower it? I mean, those are possibilities. Obviously, the line wasn't measured prior to that. There's no actual evidence to my knowledge as to what exactly height it was installed decades ago. We know what the standard was supposed to be, but those are just unknowns at this point. So is there a dispute? I guess the answer is no, but there are unknowns associated with it. So we can take it as a given that it was about 17 and a half feet. We don't dispute that it was lower than the standard. That's three feet lower than the standard and that there was a specific statute and rule which required in detail how high it should have been. That is correct. So the argument is that that's different because we now have a specific statute. And that was going to be my point. And I suppose the question is with regard to a duty analysis. Well, first of all, do you agree that the open and obvious doctrine applies with regard to the duty analysis? It does. Yes. So that someone, as Mr. Sporn mentioned, could still be found not to be negligent, even if the duty analysis said they have a duty under this statute, for instance, not to have the power lines too low. Would that be correct? If I understand your question correctly, I don't agree with Mr. Sporn's analysis of that. And I will be happy to explain why. Go ahead. The one case that Mr. Fox's position rarely mentions is the Barclay case. Is the what? Is the Barclay case, a Supreme Court case from a year that's escaping me at this moment. But it's a Supreme Court case. It predates beer and it predates hosiery. That is an incident where an automobile ran into a train at a crossing. The folks who were injured in the car sued the railroad. They allege breaches of any number of ICC rules. Several of those rules were basic standard of care. The railroad must take reasonable care to have things be in certain condition. But the Supreme Court specifically notes that two of those rules had enhanced specific duties associated with them. It had to do with the ringing of the bells on the crossing before the train arrived and then how long it rang after the train left the crossing. In that case, the Supreme Court applies the common law defenses in the exact same manner to both breaches of duty. The standard of care breaches and the specific duty breaches that are alleged of the ICC rules. That's where we depart. Mr. Fox's brief doesn't challenge my brief in that regard in any manner. That what the holding of the Bartle case is, is what I just said. When I first picked this appeal up, I thought that this case presented a division of authority between beer and hosiery. By the time I got to where I stand here today, I'm convinced it's actually a dispute between beer and Bartle. Because beer misses those two specific duty allegations in the Bartle case. The Bartle case says, citing the Koster article or treatise, whichever one it was, says if the specific duty takes the place of the common law, it's still treated as though, and I write it in quotes, in the field of tort liability. And in the Bartle case, it applies comparative negligence to even the specific duty breaches that are alleged. And therefore, the entire case, all allegations, were dismissed. That's how this case should be resolved. It's the Supreme Court we're talking about. And the Second District's reading of that Bartle case just flatly is wrong. I don't think they misquoted, but I think that the case itself is wrong. It simply misses. It repeatedly says there are no specific duties that were breached in the Bartle case. And it's just simply wrong. Well, Bartle said that, according to the statute, that the public liability shall, So in case it omits to do any acts, there's a thing required to be done, and the public utility shall be liable, citing Section 5-201, I believe. So it will support an action of personal injury resulting from a violation of ICC rules. Does it not? On page 223 of the Bartle case, it says, Specifically recites that two rules at issue, These rules are about the ringing of the bells, the time frames. For all intents and purposes, the exact same thing as how high a power line should ring. Specific number, shall we say, of seconds or feet that the bell has to ring or how high the power line has to be hung. That's the circumstance that we are dealing with here. And it continues on that the field of court liability should treat it as if it had been developed at common law. So the common law defenses are applicable. What defenses are those? I'm sorry? What are the common law defenses that are applicable? In that case, in particular, it was resolved on, I want to say comparative, but I don't know that it was comparative. It was contributory negligence. And that decision also states that the assumption of risk defense is available to defeat a specific duty statute. But one of the differences is, as earlier discussed, is the open and obvious doctrine isn't a defense. It's part of a duty analysis, isn't it? I agree that it is part of the duty analysis. When Barthel talks about a defense, what did he have to say about a duty analysis? I don't know that Barthel goes there. I don't know. Well, but that's what this case is about. No, I understand that's what this case is about. But why does Barthel control if it doesn't address the duty analysis? Because of the way that it sets up the rest of the story that the other cases have now been dealing with, including Hoseley, which then says, look what Barthel says. It says apply the common law to the circumstances of this statutory violation. And Hoseley goes forth and does that. Now, I'm not denying that the Hoseley case only has generic standard of care type of violations involved, but that's what those two cases in combination say. And furthermore, the assumption of risk defense is, for all intents and purposes, the exact same analysis as the open and obvious. In fact, you cannot successfully present the assumption of risk defense without there being a finding of an open and obvious danger that the, in this case, the plaintiff, decided to ignore or take the risk of encountering. It is exactly the same analysis. So I don't think it's as big a stretch to say that, well, we're only talking about duty when the analysis is exactly the same. Well, this court wrote in the Winters case, to determine whether a defendant ought to legally recognize duty to a plaintiff, courts must examine four traditional duty factors. One, the reasonable foreseeability of the injury. And two, the likelihood of the injury. And the others are magnitude of the burden guarding against it, the consequences of placing the burden on the defendant. And the position of the plaintiff is that the first two aspects of the duty analysis, because of the specific statute, don't apply. That is, open and obvious doctrine can't affect the plaintiff's duty or whether the plaintiff breached the duty because the statute addresses the question of the defendant's duty and says he's got a duty. Isn't that correct? I will say that that is correct, that that's what their position is. What's the matter with it analytically? If Barthel didn't exist, then I — Well, you see, when you keep going back — Well, I — You keep saying Barthel, and I keep saying Barthel didn't address duty, and this is a duty analysis. Barthel addressed defenses. And as you heard Mr. Safforn say, you still can argue you weren't negligent. Cameron was a negligent. You still can argue you were negligent. You still can argue you acted reasonably. The question is, does the open and obvious doctrine in this case mean that there is no duty that Amaro don't? And I don't see how Barthel addresses that. My answer to that is yes. Barthel had no — does the word duty appear in that decision? That decision is not centered on duty, but that decision — That's a diplomatic response to my question. No, it doesn't. I'm sure the word duty is in there somewhere, but it doesn't center at all. I'm not trying to be snide. I'm just saying that — But what Barthel does is, say, apply the common law rules because that's — we have to treat the statute, the derogation of the common law as — to treat it as within the field of liability. Would you argue that this fighting and failure of the plaintiff, the argument at trial level, would amount to strict liability? I can, yes. And I think the plaintiff does. No, my question is, did you, to the trial judge? The argument was made, yes. How is it strict liability in — you heard Mr. Spohn say he conceded at the trial level, he's conceded now. No, this isn't strict liability. You're still free to make all these other arguments. I think — well, I think the argument has been made — I recognize that he's not arguing — he's not written on the page, I'm arguing for strict liability. No, no, no. I'm not suggesting that. But within his brief, it also does say that these violations establish proximate cause. I mean, that's written in the brief. It's the undertone of the argument that — especially that since it doesn't recognize the impact of the borrowed decision, even in the reply brief, it's not mentioned. But it's the undertone. I'm not suggesting that he's making that argument, and I'm not denying that those defenses would be available to us at trial. Well, let me ask it directly because I understand the plaintiff's argument. They're saying because of the specific statute, because of how the legislature is now defined this, and said with this great specificity the height of power lines given how dangerous power lines are, why isn't the plaintiff correct to say, as he's asserting, that that addresses and eliminates any duty question the defendant might try to raise with regard to the first two aspects of a duty analysis? You're not going to want to hear me say it because Michael says so. I mean, that's my point. If we disagree that Barthel says that, do you lose? Presumably so, yes. And also, by the way, they open an obvious doctrine. You're talking about it. You can see it, and therefore it applies. What if the power lines were four feet high, and a pedestrian is walking along, and you'd say, well, you know, there's a power line. You can see it hanging, and it's four feet above the ground. And if you walk into it, then you are subject to injury. As a result, well, too bad for you. Would that argument follow? I'm assuming in your question that somehow Aaron is responsible for only being four feet off the ground. Yes. Okay. Other than a storm or something of that sort. Yeah, they put it that way. Right. They figure this is not a well-used sidewalk, so it would be easier to put it at four feet, but surely anyone's going to be able to avoid it. My response to that is a power line, whether it's at 20-some feet, 17-some feet, or four feet, is, according to the Illinois Supreme Court, always presenting an open and obvious danger. And if a person chooses to walk near a four-foot, which a pedestrian could do, come in contact with four feet, then that doesn't, regardless of the type, it never is not an open and obvious circumstance. So four feet above ground, too bad. You lose. You should have known it. So you're arguing the opposite of strict liability. You're arguing absolute defense. No, I'm not. And the fear that, oh, my goodness, the power companies could just put all their lines at four feet, right, and buy much smaller sticks to put them on, right, that's overblown. Because? Because the rules require it to be that high. And if this street here was nine-foot, I think we might start tending in toward some willful and wanton obligation or liabilities that would probably still help the... But if they're positive, the rules require it. But going back, these are the rules that required it at 21 feet instead of 17-1⁄2. They were ignored. So everyone now puts it at four feet and says, well, rules are rules. I guess I would disagree. And according to my reading of the Illinois law, the debacle case allows open and obvious to become a defense even to the statutory violation. So if we were to reverse it or remand, you would still be able to raise defenses on trial, would you not? Yes. So strict liability doesn't apply. Correct. I think that we should, at the very least here, mention the concept of open and obvious. Number one, this is all subjective. Open and obvious is an objective standpoint. So what Mr. Fox may have misapprehended when he was there, whether it was in 2013 or 2015, is really not relevant to that overall analysis. And furthermore, there's no indication that Ameren had any idea that either in 2013 or 2015, anyone was going to be jarring, he said, his truck back and forth with a fully extended boom that even their own expert says is too tall for the circumstances. I mean, it's basically bound to hit something sometime. Because it was above 20.75. That Ameren had no information, no one ever put Ameren on notice that these things were going to be happening. So from a foreseeability standpoint, all we have is this fully articulated dump truck that ran into it 30 days prior. Well, that's some notice, isn't it, that you got a problem with the lights? Well, that's a fully articulated dump truck that even Mr. Fox says was way taller than his boom truck. So that thing would have taken down a tunnel, presumably, right, if it would have hit it. So I don't know that that puts notice on, especially on a boom truck, Ameren. I suppose, just viewing this not in a technical sense, by the way, your argument on open and obvious essentially would mean that Ameren has no liability at all for violating substantially the statute saying the height of the power lines. Because, too bad, this is open and obvious, and, you know, we're sorry you were injured, but you drove a truck into it, and go away. That's not what Ameren is saying. Well, it sounds like it. And there are arguments in the case, and there are exceptions even to the open and obvious. I'm giving your view of the case, under what circumstances would Ameren be liable for anything? When the plaintiff did not make a purposeful decision to engage his large metal pole into power lines that were directly above him, and actually, furthermore, chose to have his spotter be worried about hitting a fence as opposed to looking up, and himself personally making the decision that I looked, it looked fine, I got back in my truck, and never thought about it. So they never looked, it would be okay? If there was a reason for him to have never looked, here he saw it, frankly, he recognized the danger, and then chose to ignore it. That's not so much a coincidence. Walking along and seeing a four-foot power line? I think that our brains teach us to go to the other side of the street when those sort of things occur. So no liability for Ameren under that circumstance either for violating the statute? Depends on the circumstances, there can be any number of exceptions, but yes. Thank you, counsel, your time is up. Thank you. Mr. Spaulding. Thank you, Justice. I will be brief. Counsel said power lines are always open and obvious, and he based that on the 100-year-old case in Ginnos by the Illinois Supreme Court. What I think is interesting about that case, Well, he's right, it's open and obvious. I disagree wholeheartedly. But I think what's interesting about that case that was not discussed is that there was two defendants in that case, the property owner and the power company. The power company was not dismissed from Ginnos in that case. And so because power companies are different from a residential property owner or a commercial property owner, Ameren has a higher duty of care based upon the business that they're in. And so there's a whole host of cases after Ginnos that holds these power lines were not open and obvious because it was reasonably foreseeable to Ameren that the contact might occur, including ruled upon by this court in the Martins case. And so I would like to address their discussion of Barthel again, because what I think is important to realize in Barthel, that was ruled on in 1978 at a time when contributory negligence of the plaintiff was an absolute defense. And so here in Barthel, for the specific duty that they were, the statute said, was to have lights flashing for 20 seconds. And they said, okay, I've got the quote here, is that Barthel said that you've made a prima facie evidence, a prima facie case of negligence to be submitted to the jury if you show the lights were on. But then they move on to the contributory negligence of the plaintiff. That analysis is whether or not the plaintiff had a duty. And the plaintiff reached that duty that day. And if there was 1% contributory negligence, that's an absolute defense. That is materially different than analyzing the power company's duty, which is what the open and obvious rule and what the common law requires with regards to power companies. I asked Lucero whether that case addressed duties as opposed to negligence or contributory negligence, and he didn't seem to think, or at least couldn't claim it did, did he? I believe that it did discuss statutory duties, and that it said when you made a prima facie case of a statutory duty violation. Negligence? What's that? That you studied a case for negligence? Yes, and that it must be submitted to the jury. And so that it's a jury question, then. And so what they also strongly disagree with is when they said, these are, oh, Cameron, active fact, who was not there when the incident occurred, says this is open and obvious. The people that were there disagreed based on their perception of everything. That's a facts question. And so it was inappropriate to rule as a matter of law based on the circumstances there. And so additionally, they said that the only, I think he said, the only way Cameron can be liable for low-hanging power lines hanging four feet above the ground is if the person uses a spotter or something along those lines.  The law says Amarant is liable if it's reasonably foreseeable. People might come in close proximity to the power lines. And here Amarant had notice that trucks were operating below these power lines and actually had knowledge and actual, not just constructive notice of the prior incident. And that's what Nelson says. The Nelson case says, the particular manner or method by which plaintiff is injured is irrelevant to the determination of defendant's liability for negligence. You don't have to foresee Brad Fox is going to be driving a boom truck with his boom elevated on a Tuesday when these things are up. All you have to do, according to Nelson and a whole host of other cases that we cite, where the plaintiff's injury resulted from the same physical forces whose existence required the exercise of greater care than was displayed and were the same generally expectable, unforeseeability of the exact development and the extent of the loss will not limit liability. This is where they're claiming that Brad Fox, we didn't notice Brad Fox was working that day, or that he's not going to use his father. It's not in defense to this type of action. And so... Counselor, your time is up. Thank you very much. The court will take this matter under advisement. The court stands in recess. Thank you, Counselor.